# JAMES STEELE

*v.*

# THE FIRST NATIONAL BANK OF JOLIET.

1. EQUITABLE LIEN—*debtor and creditor—control of partnership funds.* Where several persons, acting together, borrowed a sum of money from a bank, and shipped a lot of cattle to market consigned to another person to sell, who, after making sale, paid the expenses and charges attending the shipment and sale, and also paid off and discharged a mortgage on the cattle, and held about half of the proceeds in his hands, and one of the partners directed him to pay it to the bank, and he agreed to hold it subject to the order of the partners, and it was paid to one of the partners by his, and the direction of another, who constituted a majority: *Held,* that by the direction of one partner to pay to the bank, and what he said, gave the bank no lien on the fund, and the agent was authorized to pay it, as he did, under the direction of the other two partners, and as he paid the money before the bank filed their bill to enforce payment out of the fund, there was nothing upon which an equitable lien could attach.

2. VERBAL PROMISE—*statute of frauds.* But even had the person, to whom the shipment was made, promised to pay the balance to the bank, as it was not in writing, and signed by him, the promise would have been for the payment of the debt of another, and within the statute of frauds.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. RANDALL & FULLER, for the appellant.

Messrs. GOODSPEED, SNAPP & KNOX, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed in the circuit court of Will county, by appellee, to reach money alleged to have been in the hands of appellant, Steele. The bill was filed in April, 1867, and alleges that appellee recovered a judgment by confession in the Will circuit court, against Pope, Morgan and Longworth, about the 2d day of March, 1867; that executions had been issued, and returned no property found, by the sheriffs of Will and Grundy counties, to which they had been

directed, and in which defendants resided. The bill alleges that, during the months of December, 1866, and January, 1867, the defendants in that judgment owned, as partners, one hundred and fifty head of cattle, of the value of $8000 ; that, in the latter part of January, they entered into an arrangement with Steele by which the cattle were taken to Chicago, consigned to his care, to be sold by him ; that, at that time, the cattle were sold, the avails went into the hands of Steele, amounting to over $4000, and was held in trust by him for the benefit of defendants to the judgment, or some of them, and it is charged that it should be applied to the payment of the judgment ; that the defendants in the judgment were combining and confederating with Steele to cheat and defraud appellee; and they claim that, inasmuch as the money was loaned to the defendants in the judgment, jointly, and formed a part of the purchase money of the cattle, they have the right to be first satisfied ; that if any sale of the cattle was made to Steele, it was only colorable, and to place them beyond the reach of creditors ; that Pope, Morgan and Longworth have no property.

Appellant, Steele, answered, denying any knowledge of the judgment, but states his belief that one was recovered ; denies any knowledge whether Pope, Morgan and Longworth were partners as alleged, but believes they were ; he denies that he made such an arrangement with them as charged in the bill, and denies that he took possession of the cattle as charged, but states that the cattle came to him from Pope and Morgan, incumbered by a mortgage to Casey; that he paid Casey $2218.95, and he sold the cattle for $5504.65; that by arrangement, he deducted from that amount the sum he paid Casey to release them from the mortgage, with ten per cent interest and all costs, charges, and expenses of bringing the cattle to Chicago and selling them; that the expenses amounted to $715, leaving the sum of $2530.70, which, about the first day of April, 1867, he paid to Pope and Morgan ; and he denies that he has any money or property belonging to the

defendants in the judgment, and denies that any sum belonging to them was in his hands when the bill was filed; denies all combination, etc., and concludes with a general traverse of the allegations of the bill.

An amended bill was filed, charging that Steele had, after paying all liens and charges on the cattle, in his hands $2530.70 belonging to Pope, Morgan and Longworth, and Steele was informed by Longworth that there were no other partnership funds to pay appellee's debt, and that Steele agreed, and promised Longworth that he would hold the same and would not pay it to either partner without the consent of all; that Longworth then informed Steele that he desired the money paid to appellee, and that Steele agreed to hold it for that purpose.    This is denied by Steele's answer to the amended bill.    The court rendered a decree requiring Steele to pay to appellee the sum of $2530.70, with interest from the 24th day of April, 1867, from which Steele appeals to this court, and assigns as error the rendition of the decree by the court below.

The evidence shows the cattle were sent to Chicago, sold, and Casey's mortgage paid, as set forth in the pleadings; and that a few days subsequently Longworth went to appellant and requested him to pay this debt to appellee after paying Casey's mortgage; that appellant said he would pay the money as the parties should direct.    Some of the witnesses state he agreed to hold it until they all agreed he should pay it to the bank. Abel Longworth states that appellant said he would hold the money until the partners should settle, and he would then pay it as they should direct.    Morgan seems to have drawn all of it.    He also states that appellant agreed not to pay it to any one without his consent, but fails to state that he did not consent to its being paid to Morgan.

With appellant's denial of the promise, the evidence on that point seems to be conflicting; but even if it were not, there is no pretense that Morgan and Pope ever consented that he should hold it for, or pay it to the bank, and their consent was

26    STEELE v. FIRST NAT'L BANK, JOLIET.    [Sept. T.,

Opinion of the Court.

the condition upon which he could hold it for that purpose; and he swears, and is not contradicted, that he paid it by the agreement of two out of three of the partners. This was a legal payment, and discharged him from his indebtedness to the firm. One partner has an equal right with his co-partner to collect debts due the firm, and to give acquittances. Nor can one partner revoke the authority to his co-partner to collect firm debts by simply notifying their debtors not to pay to his partner. The bank acquired no claim by the promise, if it was made, as it was not in writing and signed by the appellant, as the statute requires for the payment of a debt of another person.

Appellant swears positively that on the day the bill was filed he owed the firm nothing; had no property or effects of theirs in his hands, nor has he ever had since that time. He states the manner in which he paid the balance of the proceeds of the cattle, and there is no evidence to overcome his testimony on that point; and if not indebted to defendants in the judgment, and having none of their property, goods or effects in his hands, we are at a loss to perceive how appellee has acquired any equitable claim upon him for the payment of its judgment. Generally, to give equity jurisdiction in such cases, the defendant must have property of the debtor in his hands, or be indebted to him, when the bill is filed. If he has, then if all of the precedent steps have been taken, and his remedies at law have been exhausted against the debtor, the filing of the bill creates a lien on the property, or amount the defendant owes to the debtor, and it becomes liable to the satisfaction of the judgment against the debtor. Nor can the defendant, in such a case, pay the debt or restore the property to the debtor so as to release himself, after the lien attaches. But, in this case, there was nothing upon which the lien could attach. Nor do we find any evidence in the record from which it can be inferred that there was a conspiracy entered into by appellant, Pope and Morgan, to defraud the bank. Steele swears that he was not aware that the firm owed the bank

until after he had sold the cattle, either in whole or in part. If this be true, and it is uncontradicted, he could not have obtained possession of the cattle for any such purpose. Nor do we perceive that the circumstances developed by the evidence warrant such a conclusion. Nearly the whole transaction seems to have taken the usual course of such matters, and there is no part of it so irregular as to warrant the conclusion that there was a conspiracy to defraud the bank.

For these reasons, the decree of the court below is reversed and the cause remanded.

*Decree reversed.*